The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 29, 2020, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: September 29, 2020**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PATRICK J. BUTLER & | ) | Case No. 19-17489 |
| KELLI BUTLER, | ) | |
|     Debtors. | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | |
| PATRICK J BUTLER & | ) | Adversary Proceeding |
| KELLI BUTLER, | ) | No. 20-1050 |
|     Plaintiffs. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORTLAND SAVINGS & | ) | |
| BANKING COMPANY, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

In this adversary proceeding, the debtors seek a declaratory judgment that creditor Cortland Savings & Banking Company ("Cortland Bank") holds no valid

---

[1] This Opinion is not intended for official publication.

lien against the debtors' residence under the doctrine of equitable subrogation. In a counterclaim, Cortland Bank seeks a declaratory judgment that it does indeed have a valid lien under the doctrine of equitable subrogation. This adversary proceeding is currently before the Court on the debtors' motion to dismiss Cortland Bank's counterclaim. The debtors argue that the counterclaim must be dismissed because it contains no allegation that Cortland Bank ever requested a mortgage on the debtors' residence as additional security for a business loan between Cortland Bank and 21st Century Concrete, a company owned by debtor Patrick Butler. Cortland Bank argues in response that equitable subrogation is appropriate because, among other reasons, Patrick Butler and 21st Century Concrete improperly disposed of other collateral securing Cortland Bank's loan. For the reasons that follow, the Court holds that the counterclaim fails to state a claim upon which relief can be granted, but allows Cortland Bank until **October 30, 2020**, to file an amended counterclaim. If no amended counterclaim is timely filed, the Court will dismiss the original counterclaim.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a)

and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

PROCEDURAL BACKGROUND

The debtors filed a Chapter 7 bankruptcy petition on December 10, 2019 (Case No. 19-17489). On May 28, 2020, the debtors filed this adversary proceeding seeking a declaratory judgment as to the validity, priority, or extent of Cortland Bank's lien on the residence (Docket No. 1). On June 29, 2020, Cortland Bank filed its answer and a counterclaim (Docket No. 6). In its counterclaim, Cortland Bank seeks a declaratory judgment that under the doctrine of equitable subrogation it holds a valid secured claim on the debtors' residence based on the commercial mortgage of Civista Bank recorded on September 1, 2016. On July 6, 2020, the debtors filed a motion to dismiss Cortland Bank's counterclaim, alleging that Cortland Bank has failed to state a plausible claim that there was an agreement that the loan would be secured by a mortgage on the debtors' residence (Docket No. 11). On July 20, 2020, Cortland Bank filed a response to the motion to dismiss, arguing that equitable subrogation is a flexible doctrine, and that there is no question that the debtors took out two business obligations with Civista Bank secured by a mortgage on their residence (Docket No. 13).

FACTUAL ALLEGATIONS

The following statements are based on either the allegations in Cortland Bank's counterclaim or the allegations admitted in Cortland Bank's answer. The debtors own real property located at 28505 Osborn Road, Bay Village, Ohio 44140, and utilize the property as their primary residence ("the residence") (Docket No. 1, paragraph 7). At the time of filing the petition, there were two mortgages on the residence held by Civista Bank (Docket No. 1, paragraph 8). The first mortgage with Civista Bank is apparently a consumer mortgage recorded in February 2016, with a balance as of the petition date of approximately $251,000 (*Id.*). The second mortgage with Civista Bank is apparently a commercial mortgage recorded on September 1, 2016, with a balance as of the petition date of approximately $283,000 (*Id.*).

On March 19, 2018, Cortland Bank entered into an asset-based business loan agreement with 21st Century Concrete in the principal amount of $1,000,000, a commercial security agreement in the amount of $1,000,000, and a promissory note in the amount of $1,000,000 (Docket No. 1, paragraph 10; Docket No. 6, paragraph 10). Also on March 19, 2018, debtor Patrick Butler executed a commercial guaranty, guaranteeing payment of 21st Century Concrete's indebtedness to Cortland Bank (Docket No. 1, paragraph 11; Docket No. 6,

4

paragraph 11). The collateral for the loan agreement and associated promissory note included all of 21st Century Concrete's business assets and the assignment of a life insurance policy (Docket No. 1, paragraph 13; Docket No. 6, paragraph 13). The proceeds of the business loan agreement were used to pay off the line of credit owed to Civista Bank secured by Civista Bank's second mortgage on the residence (Docket No. 1, paragraph 15; Docket No. 6, paragraph 15). The proceeds did not pay off Civista Bank's equipment loan, which was also secured by the second mortgage (*Id.*).

In paragraph 33 of the complaint, the debtors note that ". . . Cortland Savings never presented [the debtors] with a mortgage on the Homestead Property for execution in order to secure the asset-based Business Loan and its associated Promissory Note" (Docket No. 1). In its answer and counterclaim, Cortland Bank "admits the allegations in [paragraph] 33" (Docket No. 6).

RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b), provides that a claim for relief in any pleading, including a counterclaim, may be dismissed for failure to state a claim upon which relief can be granted. "[A] counterclaim, like all pleadings, must conform to the pleading requirements of [*Bell Atl. Corp. v.*

5

*Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)]." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (citations omitted). *Accord Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 401 (6th Cir. 2012), (reviewing district court's decision to dismiss counterclaim under Rule 12(b)(6) and pleading requirements of *Twombly* and *Iqbal*), *aff'd*, 572 U.S. 118 (2014); *Nat'l City Bank v. Gilkey*, No. 2:11-cv-02352, 2013 WL 12284637, at *4 (W.D. Tenn. Mar. 19, 2013) ("In assessing whether Respondents' counterclaim states a claim on which relief may be granted, the Court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in [*Iqbal*] and [*Twombly*]"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (3d ed. 2002). ("[A] motion under [Rule 12(b)(6)] is available to test a claim for relief in any pleading, whether it be in the plaintiff's original complaint, a defendant's counterclaim, a defendant's crossclaim or counterclaim thereto, or a third-party claim or any other Rule 14 claim.").

Pleadings in adversary proceedings are governed by Federal Rule of Civil Procedure 8, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to

6

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).

A counterclaim, like a complaint, must also "state a claim to relief that is plausible on its face." *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d at 99; *Static Control Components, Inc. v. Lexmark*, 697 F.3d at 401; *Gilkey*, 2013 WL 12284637, at *4; 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (3d ed. 2002) ("Rule 8(a) applies not only to an original claim contained in a complaint, but also to a pleading containing a claim for relief that takes the form of a counterclaim, cross-claim, or third-party claim.").

The Supreme Court has stated that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has further noted:

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

*Id.* at 679. Under the pleading standard conveyed in *Iqbal* and *Twombly*, a complaint must allege more than a mere "formulaic recitation" of the elements of a

7

20-01050-aih    Doc 24    FILED 09/29/20    ENTERED 09/29/20 16:12:33    Page 7 of 12

claim to withstand a Rule 12(b)(6) challenge. *NM EU Corp. v. Deloitte & Touche LLP (In re NM Holdings Co.)*, 622 F.3d 613, 623 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677-78); *see also Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). "[A] legal conclusion couched as a factual allegation" need not be accepted as true. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).

In addressing the debtors' motion to dismiss Cortland Bank's counterclaim, the Court does not intend to consider matters outside the pleadings or treat the motion as one for summary judgment. *See* Civil Rule 12(d) made applicable by Bankruptcy Rule 7012; *Fair Fin. Co. v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 656 n.1 (6th Cir. 2016) (documents referred to in pleadings may be considered without converting a motion to dismiss into one for summary judgment).

## DISCUSSION

Under Ohio law, the doctrine of equitable subrogation states:

> Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money can not be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening

> lienholders than they would have borne if the old mortgage had not been released.

*ABN AMRO Mortg. Grp. v. Kangah*, 2010-Ohio-3779, ¶ 8, 126 Ohio St. 3d 425, 427, 934 N.E.2d 924, 926 (quoting *Straman v. Rechtine*, 58 Ohio St. 443, 51 N.E. 44 (1898), paragraph one of the syllabus).

More recently, the Supreme Court of Ohio has stated that equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *Id.* (quoting *State v. Jones,* 61 Ohio St.2d 99, 102, 399 N.E.2d 1215 (1980)). "The application of equitable subrogation depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes." *Id.* at 428 (internal citations omitted). Because it is an equitable doctrine, the equity of a party asserting a right to equitable subrogation "must be strong and his case clear." *Id.* (internal citations omitted). "Equitable subrogation is not appropriate where the party seeking its application was in the best position to protect its own interest." *Leppo, Inc. v. Kiefer*, No. 20097, 2001 WL 81262, at *2 (Ohio Ct. App. Jan. 31, 2001). A lender's negligence is sufficient to defeat a claim of equitable subrogation.

9

*United States v. Long*, 121 F. Supp. 3d 763, 786 (N.D. Ohio 2014) (citing *Kangah*, 126 Ohio St. 3d at 428).

In its response to the debtors' motion to dismiss, Cortland Bank cites *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487 (6th Cir. 2005). However, *Hartford Steam* applied Michigan law, not Ohio law. In this case, no party has suggested that any law should apply other than Ohio law. For example, there does not appear to be a choice of law provision in any of the documents provided, the real property at issue is located in Ohio, and the events that gave rise to this adversary proceeding took place in Ohio. Therefore, the Court will apply Ohio law.

There is nothing in the factual allegations of the counterclaim to suggest that Cortland Bank intended to be secured by a mortgage on the debtors' residence. In its answer, Cortland Bank admits that it never presented the debtors with a mortgage agreement to secure its loan (Docket No. 1, paragraph 33; Docket No. 6, paragraph 33). If Cortland Bank cannot plausibly allege consistent with Rule 9011 that "the agreement [was] that [Cortland Bank] shall have a [] mortgage lien on the [residence] to secure [its] money," it cannot state a plausible claim for equitable subrogation. *Straman v. Rechtine*, 58 Ohio St. 443 at paragraph one of the syllabus. In short, there is nothing in the counterclaim to suggest that anyone other

10

than Cortland Bank was responsible for Cortland Bank's failure to obtain a mortgage on the debtors' residence.

Perhaps there are circumstances involving the debtors and Cortland Bank that might justify equitable subrogation, but to support such a claim, Cortland Bank would need to allege facts to plausibly suggest that would be the case.

Accordingly, the Court holds that Cortland Bank's counterclaim fails to state a claim upon which relief can be granted, but allows Cortland Bank until **October 30, 2020**, to file an amended counterclaim. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) ("[W]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (quoting *EEOC v. Ohio Edison Co.,* 7 F.3d 541, 546 (6th Cir.1993)); *see generally In re Classicstar, LLC*, No. 10-8059, 2011 WL 652744, at *5 (B.A.P. 6th Cir. Feb. 24, 2011).

## CONCLUSION

The Court holds that Cortland Bank's counterclaim fails to state a claim upon which relief can be granted, but allows Cortland Bank until

**October 30, 2020**, to file an amended counterclaim.  If no amended counterclaim is timely filed, the Court will dismiss the original counterclaim.

    IT IS SO ORDERED.