The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on December 14, 2020, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: December 14, 2020



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PATRICK J. BUTLER & | ) | Case No. 19-17489 |
| KELLI BUTLER, | ) | |
| Debtors. | ) | Judge Arthur I. Harris |
| | ) | |
| | ) | |
| PATRICK J. BUTLER & | ) | Adversary Proceeding |
| KELLI BUTLER, | ) | No. 20-1050 |
| Plaintiffs. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CORTLAND SAVINGS & | ) | |
| BANKING COMPANY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

In this adversary proceeding, the debtors seek a declaratory judgment that

creditor Cortland Savings & Banking Company ("Cortland Bank") holds no valid

---

[1] This Opinion is not intended for official publication.

lien against the debtors' primary residence located at 28505 Osborn Road, Bay Village, Ohio 44140 ("the residence"), under the doctrine of equitable subrogation. In a counterclaim, Cortland Bank seeks a declaratory judgment that it does indeed have a valid lien under the doctrine of equitable subrogation. This adversary proceeding is currently before the Court on the debtors' motion to dismiss Cortland Bank's amended counterclaim. The debtors argue that the amended counterclaim must be dismissed because it contains no allegation that Cortland Bank ever requested a mortgage on the debtors' residence as additional security for a business loan between Cortland Bank and 21st Century Concrete, a company owned by debtor Patrick Butler. Cortland Bank argues in response that equitable subrogation is appropriate because, among other reasons, Patrick Butler and 21st Century Concrete improperly disposed of other collateral securing Cortland Bank's loan.

For the reasons that follow, the Court (1) grants the debtors' motion to dismiss the amended counterclaim for failure to state a claim, (2) denies Cortland Bank's motion to certify a question of state law to the Ohio Supreme Court, and (3) believes that dismissal of the amended counterclaim may render moot the debtors' own affirmative request for declaratory relief, but invites the parties to submit briefing on this issue by **January 5, 2021**. Because this decision does not yet resolve all claims of all parties to this adversary proceeding, the Court does not

2

intend this opinion and related order to be a final appealable order within the meaning of 28 U.S.C. § 158(a)(1). *See* Fed. R. Civ. P 54(b) (made applicable in bankruptcy proceedings under Fed. R. Bankr. P. 7054(a)); *see also Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589–90 (2020).

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## PROCEDURAL BACKGROUND

The debtors filed a Chapter 7 bankruptcy petition on December 10, 2019 (Case No. 19-17489). On May 28, 2020, the debtors filed this adversary proceeding seeking a declaratory judgment as to the validity, priority, or extent of Cortland Bank's lien on the residence (Docket No. 1). On June 29, 2020, Cortland Bank filed its answer and a counterclaim (Docket No. 6). In its counterclaim, Cortland Bank sought a declaratory judgment that under the doctrine of equitable subrogation it holds a valid secured claim on the debtors' residence based on the commercial mortgage of Civista Bank recorded on September 1, 2016. On July 6, 2020, the debtors filed a motion to dismiss Cortland Bank's counterclaim, alleging

3

that Cortland Bank has failed to state a plausible claim that there was an agreement that the loan would be secured by a mortgage on the debtors' residence (Docket No. 11). On July 20, 2020, Cortland Bank filed a response to the motion to dismiss, arguing that equitable subrogation is a flexible doctrine, and that there is no question that the debtors took out two business obligations with Civista Bank secured by a mortgage on their residence (Docket No. 13). On September 29, 2020, the Court issued an opinion and held that Cortland Bank's June 29, 2020, counterclaim seeking declaratory judgment failed to state a claim upon which relief can be granted but allowed Cortland Bank until October 30, 2020, to file an amended counterclaim (Docket No. 24).

On October 30, 2020, Cortland Bank filed an amended counterclaim alleging that the debtors' actions fall within § 7.6(b)(3) of the Restatement (Third) of Property (Mortgages), and that the Court should apply the doctrine of equitable subrogation (Docket No. 28). On November 2, 2020, the debtors moved to dismiss Cortland Bank's amended counterclaim (Docket No. 29). In the motion to dismiss, the debtors argued that because Cortland Bank cannot allege that it intended to be secured by a mortgage lien and cannot show that the entire obligation secured by the mortgage was discharged, Cortland Bank's amended counterclaim should be

dismissed.  On November 16, 2020, Cortland Bank filed a brief opposing the debtors' motion to dismiss the amended counterclaim (Docket No. 31).

On November 16, 2020, Cortland Bank also filed a motion asking this Court to certify a question of law to the Ohio Supreme Court (Docket No. 30).  On November 17, 2020, the debtors filed a response opposing the motion to certify, arguing that controlling precedent from the Ohio Supreme Court already exists (Docket No. 32).  On November 24, 2020, Cortland Bank filed its reply asserting that the facts alleged in this case are distinguishable from established case law, and that it is appropriate for this Court to certify a question to the Ohio Supreme Court that seeks recognition of a cause of action under § 7.6(b)(3) of the Restatement (Third) of Property (Mortgages) (Docket No. 33).

## FACTUAL ALLEGATIONS

The following statements are based on the allegations in the debtors' complaint, Cortland Bank's amended counterclaim, or the allegations admitted in Cortland Bank's answer.  The debtors own real property located at 28505 Osborn Road, Bay Village, Ohio 44140, and utilize the property as their primary residence (Docket No. 1, paragraph 7).  At the time of filing the petition, there were two mortgages on the residence held by Civista Bank (Docket No. 1, paragraph 8).  The first mortgage with Civista Bank is apparently a consumer mortgage recorded in

5

February 2016, with a balance as of the petition date of approximately $251,000 (*Id.*). The second mortgage with Civista Bank is apparently a commercial mortgage recorded on September 1, 2016, with a balance as of the petition date of approximately $283,000 (*Id.*).

On March 19, 2018, Cortland Bank entered into an asset-based business loan agreement with 21st Century Concrete in the principal amount of $1,000,000, a commercial security agreement in the amount of $1,000,000, and a promissory note in the amount of $1,000,000 (Docket No. 1, paragraph 10; Docket No. 6, paragraph 10). Also on March 19, 2018, debtor Patrick Butler executed a commercial guaranty, guaranteeing payment of 21st Century Concrete's indebtedness to Cortland Bank (Docket No. 1, paragraph 11; Docket No. 6, paragraph 11). The collateral for the loan agreement and associated promissory note included all of 21st Century Concrete's business assets and the assignment of a life insurance policy (Docket No. 1, paragraph 13; Docket No. 6, paragraph 13). The proceeds of the business loan agreement were used to pay off the line of credit owed to Civista Bank secured by Civista Bank's second mortgage on the residence (Docket No. 1, paragraph 15; Docket No. 6, paragraph 15). The proceeds did not pay off Civista Bank's equipment loan, which was also secured by the second mortgage (*Id.*).

6

In paragraph 33 of the complaint, the debtors note that ". . . Cortland Savings never presented [the debtors] with a mortgage on the Homestead Property for execution in order to secure the asset-based Business Loan and its associated Promissory Note" (Docket No. 1). In its answer, Cortland Bank "admits the allegations in [paragraph] 33" (Docket No. 6).

In its amended counterclaim, Cortland Bank asserts that debtor Patrick Butler's actions support a cause of action for equitable subrogation under § 7.3(b)(3) of the Restatement (Third) of Property (Mortgages) (Docket No. 28, paragraphs 15-16). According to the amended counterclaim:

> Patrick J. Butler promised to Cortland Bank that the obligations of 21st Century Concrete would be adequately protected – without Cortland Bank taking a mortgage on the Homestead Property – by putting up all of its assets as collateral, including its accounts receivable (which it asserted were over $3 million). As part of that promise to Cortland Bank to relieve him of any personal responsibility to it, Patrick J. Butler represented that 21st Century Concrete would not take any action to diminish the value of that collateral. Notwithstanding, Patrick J. Butler immediately caused 21st Century Concrete to violate those representations by beginning to sell its collateral to the factoring companies, the result of which has been a cloud on title to the collateral and the value of the accounts receivable being greatly diminished. Yet Patrick J. Butler now claims that he should reap the benefit of that bargain in the form of him being allowed to claim his homestead exemption.

(Docket No. 28, paragraph 16).

In its amended counterclaim, Cortland Bank does not allege that Patrick Butler's representations caused Cortland Bank to decline to take a mortgage

7

position in the debtors' residence, that Patrick Butler misrepresented the value of business assets held by 21st Century Concrete, or that funds from the improper disposal of Cortland Bank's collateral were used to pay off, in whole or in part, Civista Bank's second mortgage on the debtors' residence.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b), provides that a claim for relief in any pleading, including a counterclaim, may be dismissed for failure to state a claim upon which relief can be granted. "[A] counterclaim, like all pleadings, must conform to the pleading requirements of [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)]." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) (citations omitted). *Accord Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 401 (6th Cir. 2012), (reviewing district court's decision to dismiss counterclaim under Rule 12(b)(6) and pleading requirements of *Twombly* and *Iqbal*), *aff'd*, 572 U.S. 118 (2014); *Nat'l City Bank v. Gilkey*, No. 2:11-cv-02352, 2013 WL 12284637, at *4 (W.D. Tenn. Mar. 19, 2013) ("In assessing whether Respondents' counterclaim states a claim on which relief may be granted, the Court applies the standards

8

under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in [*Iqbal*] and [*Twombly*]"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (3d ed. 2002). ("[A] motion under [Rule 12(b)(6)] is available to test a claim for relief in any pleading, whether it be in the plaintiff's original complaint, a defendant's counterclaim, a defendant's crossclaim or counterclaim thereto, or a third-party claim or any other Rule 14 claim.").

Pleadings in adversary proceedings are governed by Federal Rule of Civil Procedure 8, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).

A counterclaim, like a complaint, must also "state a claim to relief that is plausible on its face." *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d at 99; *Static Control Components, Inc. v. Lexmark*, 697 F.3d at 401; *Gilkey*, 2013 WL 12284637, at *4; 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (3d ed. 2002) ("Rule 8(a) applies not only to an original claim

9

contained in a complaint, but also to a pleading containing a claim for relief that takes the form of a counterclaim, cross-claim, or third-party claim.").

The Supreme Court has stated that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has further noted:

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

*Id.* at 679. Under the pleading standard conveyed in *Iqbal* and *Twombly*, a complaint must allege more than a mere "formulaic recitation" of the elements of a claim to withstand a Rule 12(b)(6) challenge. *NM EU Corp. v. Deloitte & Touche LLP* (*In re NM Holdings Co.*), 622 F.3d 613, 623 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 677-78); *see also Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). "[A] legal conclusion couched as a factual allegation" need not be accepted as true. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).

In addressing the debtors' motion to dismiss Cortland Bank's amended counterclaim, the Court does not intend to consider matters outside the pleadings

10

or treat the motion as one for summary judgment. *See* Fed. R. Civ. P 12(d) (made applicable in bankruptcy proceedings under Fed. R. Bankr. P. 7012); *Fair Fin. Co. v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 656 n.1 (6th Cir. 2016) (documents referred to in pleadings may be considered without converting a motion to dismiss into one for summary judgment).

## DISCUSSION

### *Equitable Subrogation*

Cortland Bank has amended its original counterclaim to add a claim for equitable subrogation based on § 7.6(b)(3) of the Restatement (Third) of Property (Mortgages) which states:

> (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:
> . . .
> > (3) On account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition[.]

Restatement (Third) of Property (Mortgages) § 7.6(b)(3) (1997). Cortland Bank argues that the facts of this case fit under the restatement because debtor Patrick Butler improperly disposed of the assets of 21st Century Concrete which secured Cortland Bank's loan after representing that he would not take any actions to diminish the value of the collateral.

Under Ohio law, the doctrine of equitable subrogation states:

11

> Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money can not be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released.

*ABN AMRO Mortg. Grp. v. Kangah*, 2010-Ohio-3779, ¶ 8, 126 Ohio St. 3d 425, 427, 934 N.E.2d 924, 926 (quoting *Straman v. Rechtine*, 58 Ohio St. 443, 51 N.E. 44 (1898), paragraph one of the syllabus).

More recently, the Supreme Court of Ohio has stated that equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *Id.* (quoting *State v. Jones,* 61 Ohio St.2d 99, 102, 399 N.E.2d 1215 (1980)). "The application of equitable subrogation depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes." *Id.* at 428 (internal citations omitted). Because it is an equitable doctrine, the equity of a party asserting a right to equitable subrogation "must be strong and his case clear." *Id.* (internal citations omitted). "Equitable subrogation is not appropriate where the party seeking its

12

application was in the best position to protect its own interest." *Leppo, Inc. v. Kiefer*, No. 20097, 2001 WL 81262, at *2 (Ohio Ct. App. Jan. 31, 2001). A lender's negligence is sufficient to defeat a claim of equitable subrogation. *United States v. Long*, 121 F. Supp. 3d 763, 786 (N.D. Ohio 2014) (citing *Kangah*, 126 Ohio St. 3d at 428).

Just because the Ohio Supreme Court has said that "[t]he application of equitable subrogation depends upon the facts and circumstances of each case" *Kangah*, 126 Ohio St. 3d at 428, does not mean that any claim for equitable subrogation, however pleaded, automatically survives a motion to dismiss under Rule 12(b)(6). Rather, the claim must still meet the pleading standard conveyed in *Iqbal* and *Twombly*.

There is nothing in the amended counterclaim which suggests that Cortland Bank should be able to recover under § 7.6(b)(3) of the Restatement (Third) of Property (Mortgages) even if Ohio law expressly recognized such a cause of action. Cortland Bank does not allege in the amended counterclaim that its failure to secure a mortgage on the debtors' residence resulted from, in the words of § 7.6(b)(3), "misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition[.]" Restatement (Third) of Property (Mortgages) § 7.6(b)(3) (1997). The alleged misconduct is not that the debtors fraudulently induced

13

Cortland Bank into lending money without taking a mortgage as security in the residence. Instead, the alleged misconduct involves the improper disposition of Cortland Bank's collateral in the debtor-husband's business – 21st Century Concrete. Absent an allegation that funds from the improper disposition of Cortland Bank's collateral were used to fully discharge the debt secured by Civista Bank's second mortgage on the debtors' residence, Cortland Bank cannot assert a valid claim for equitable subrogation under Civista Bank's second mortgage.

Under § 7.6 of the Restatement (Third) of Property (Mortgages), a claim of equitable subrogation requires that "the entire obligation secured by the mortgage must be discharged. Partial subrogation to a mortgage is not permitted." Restatement (Third) of Property (Mortgages) § 7.6 cmt. a (1997). Cortland Bank does not allege that it discharged the entire obligation secured by the second mortgage of Civista Bank. Thus, even if § 7.6(b)(3) were an accurate statement of applicable Ohio law, the amended counterclaim would fail to meet the requirements of that section of the restatement.

The Court finds instructive the provisions in a separate restatement – Restatement (Third) of Restitution and Unjust Enrichment § 57 "Subrogation as a Remedy." Illustration 3 of § 57 provides as follows:

> Owner owns Blackacre, subject to successive mortgages to A ($100,000) and B ($50,000). Owner borrows $100,000 from C without security, then

14

defaults on his obligation to repay. Having established (by the tracing rules of §§ 58–59) that Owner used the money borrowed from C to discharge the A mortgage, C seeks to be subrogated to the A mortgage and to foreclose it. C's attempted resort to the subrogation remedy is misconceived, because a voluntary extension of credit does not give rise to unjust enrichment if the borrower fails to repay. If (contrary to the facts supposed) C's loan had been induced by Owner's fraud; or if C had intended to refinance the A mortgage, but failed to obtain the intended security or priority as a result of mistake; then C would have a claim in restitution against Owner and B and a right to subrogation by the rule of this section.

Restatement (Third) of Restitution and Unjust Enrichment § 57 cmt. a, illus. 3 (2011). This illustration has several key points. First, a voluntary extension of credit without taking security in the subject property does not give rise to unjust enrichment if the borrower fails to repay. Second, the mortgage in question must be fully discharged as a result of C's loan. Third, C would only have a right to subrogation if C's loan had been induced by Owner's fraud or if C failed to obtain the intended security as a result of mistake. *Id*. In the current adversary proceeding, however, Cortland Bank does not allege that the entire obligation secured by the second mortgage of Civista Bank was fully discharged. Nor does Cortland Bank allege that its loan had been induced by the debtors' fraud or that it failed to obtain its own mortgage on the debtors' residence as a result of mistake.

Section 57 contains another illustration relevant to this proceeding – Illustration 5. Illustration 5 provides:

15

> Induced by fraudulent misrepresentations, A pays B $500,000 for shares of stock that prove to be worthless. When the facts come to light, A is able to show (using the tracing rules of § 59) that B paid $200,000 of A's money to Bank to discharge the mortgage on B's condominium; the balance of A's money is untraceable. A's right to rescission and restitution (§§ 13, 54) gives him a claim against B to recover $500,000 plus interest. With respect to the $200,000 that can be traced into payment of B's mortgage debt, A may be subrogated to the rights previously held by Bank as mortgagee. (As subrogee A can foreclose this mortgage, but A's subrogated claim extends only to the first $200,000 of the proceeds.) A has an unsecured claim against B for the remaining $300,000 plus interest.

Restatement (Third) of Restitution and Unjust Enrichment § 57 cmt. b, illus. 5 (2011). In this illustration, equitable subrogation in a mortgage is possible even when the creditor did not intend to take a mortgage in the owner's real property – *i.e.*, where money B obtained from A by fraudulent misrepresentation can be properly traced to paying off the mortgage on B's residence. Unlike Illustration 5 however, the amended counterclaim in the current adversary proceeding contains no allegations that proceeds from the improper disposal of Cortland Bank's collateral in the business assets of 21st Century Concrete were used to pay off, in whole or in part, Civista Bank's second mortgage on the debtors' residence. Without allegations tracing the proceeds from the improper disposal of business assets to the discharge of Civista Bank's second mortgage, § 57 of the Restatement (Third) of Restitution and Unjust Enrichment does not support Cortland Bank's claim of equitable subrogation. In short, just because one or both of the debtors

16

may have committed misconduct with respect to Cortland Bank's collateral in certain business assets does not give Cortland Bank a right to equitable subordination in a mortgage securing property for which Cortland Bank never sought its own security interest.

While Cortland Bank asserts that dismissal of the amended counterclaim would result in unjust enrichment to the debtors, that argument overlooks many factors that led to the current situation involving the debtors and Cortland Bank. For example, Cortland Bank has repeatedly argued to this Court that the debtors waived their homestead exemption. This is at best a mischaracterization. The debtors never "waived" their homestead exemption. Nor is it clear that any such waiver would even be lawful. *See* 11 U.S.C. § 522(e) (waiver of exemption in favor of creditor that holds an unsecured claim against the debtor is unenforceable under the Bankruptcy Code). The debtors did give Civista Bank two mortgages that constitute security interests in the debtors' residence. The debtors did so presumably in exchange for Civista Bank lending them money to buy their home and to fund the business of the debtor-husband Patrick Butler – 21st Century Concrete.

These mortgages are unaffected by the debtors' homestead exemption by operation of established law, but they do not constitute a "waiver" of any

17

exemption. Indeed, in *Law v. Siegal* the Supreme Court held that, absent a specific provision of state or federal law, exemptions are not waived or otherwise lost due to a debtor's misconduct. *Law v. Siegel*, 571 U.S. 415, 424 (2014). Cortland Bank could have attempted to reduce the debtors' claim of exemption under § 522(o) of the Bankruptcy Code but chose not to do so. Section 522(o) – one of the "mind-numbingly detailed" exemption provisions in the words of Justice Scalia – permits the reduction of a homestead exemption to the extent that the debtor converts nonexempt property into exempt property with the intent to hinder, delay, or defraud a creditor. *See id.* Cortland Bank also could have sought a determination declaring its debt nondischargeable for fraud under 11 U.S.C. § 523(a)(2), for willful and malicious injury by the debtor to property of another entity under 11 U.S.C. § 523(a)(6), or under some other provision of § 523 of the Bankruptcy Code, but chose not to do so.

Cortland Bank did obtain a judgment lien against the debtors' residence, but among the provisions of federal bankruptcy law is a debtor's right to avoid judicial liens to the extent that they impair an exemption of the debtor. *See* 11 U.S.C. § 522(f). To the extent that Cortland Bank's judgment lien was avoided by operation of the Bankruptcy Code, any such enrichment to the debtor is the result

18

of a law enacted by Congress long before Cortland Bank loaned any money to the debtors or 21st Century Concrete.

Neither the debtors nor the Chapter 7 trustee has disputed the amount of Cortland Bank's proof of claim – in excess of $1 million. Whether sufficient funds will be recovered to pay general unsecured claims even pennies on the dollar remains to be seen. But the debtors' discharge from most prepetition debts, including the claim of Cortland Bank, rests on the application of bankruptcy law.

If application of bankruptcy law and relevant state law prevents Cortland Bank from claiming preferred status as a secured creditor, that does not necessarily mean that the debtors have been unjustly enriched. Rather, it appears that Cortland Bank's lack of a security interest in the debtor's residence stems primarily from: (1) Cortland Bank's own decision not to seek a mortgage on the debtors' residence as additional security for the money it loaned to 21st Century Concrete; and (2) straightforward application of the Bankruptcy Code and established precedent of the Ohio Supreme Court.

*Certification*

Cortland Bank has also moved this Court to certify the following question of state law:

> Does Ohio recognize the applicability of the doctrine of equitable subrogation to prevent a property owner from profiting from his own

19

wrongful actions – and thereby unjustly enriching himself – against a creditor who paid off a prior lien obligation for which the property owner had waived his homestead exemption when the property owner engages in fraudulent and unlawful activity with respect to the pledged collateral that deprives the creditor of its benefit of the bargain, as would be cognizable under Section 7.6(b)(3) of the Restatement (Third) of Property (Mortgages) and Restatement (Third) of Restitution and Unjust Enrichment §§ 3, 39 and cmt. a. (2011)?

In their response, the debtors assert that the motion should be denied because controlling Ohio Supreme Court precedent already exists regarding the elements for a claim of equitable subrogation. The debtors stress that, through the certification process, Cortland Bank is attempting to deviate from established case law and create a new cause of action for equitable subrogation based on restatement principles.

A federal court's decision to certify a question of state law to a state supreme court is at the discretion of the federal court. *Lehman Brothers v. Schein*, 416 U.S. 386, 390–91 (1974). The Ohio Supreme Court has established a two-pronged test for certified questions of state law: (1) the question must be determinative of the proceeding; and (2) there must be no controlling Ohio Supreme Court precedent on the issue. Ohio S. Ct. Prac. R. 9.01(A); *Super Sulky, Inc. v. U.S. Trotting Ass'n* 174 F.3d 733, 744 (6th Cir. 1999).

The Court agrees with the debtors that there is no need to certify a question of state law to the Ohio Supreme Court. First, the Ohio Supreme Court has already

20

established the law regarding equitable subrogation in cases such as this. *See Kangah*, 126 Ohio St. 3d at 427. Cortland Bank's desire to certify this question to the Ohio Supreme Court in order to deviate from clearly established case law is not a proper purpose of the certification process. Second, to the extent that Cortland Bank asserts that circumstances here justify a different test for equitable subrogation, as explained above, there is nothing in § 7.6(b)(3) of the Restatement (Third) of Property (Mortgages) and Restatement (Third) of Restitution and Unjust Enrichment that would support a claim for subrogation given the allegations in the amended counterclaim. Nor does the specific question requested by Cortland Bank accurately describe the circumstances of the debtors and Cortland Bank as alleged in Cortland Bank's answer and amended counterclaim. A more accurate question would be:

> Assume Bank A lends money to Company C and takes a security interest in Company C's assets and a mortgage on Guarantor G's residence. Bank B then lends money to Company C and takes a security interest in Company C's assets but chooses not to take a mortgage on Guarantor G's residence. Company C uses money from Bank B to pay down some, but not all, of the debt it owes Bank A. With Guarantor G's help, Company C improperly disposes of collateral securing Bank B's loan to Company C. Bank B does not allege that Guarantor G fraudulently induced Bank B to lend money to Company C without taking a mortgage on guarantor G's residence. Nor does Bank B allege that proceeds from improper disposal of its collateral were used to pay off, in whole or in part, Bank A's mortgage on Guarantor G's residence. Does Bank B state a valid

21

claim for equitable subrogation under Ohio law to a mortgage held by Bank A on Guarantor G's residence?

In short, Cortland Bank's motion to certify a question of law to the Ohio Supreme Court is denied because there is already controlling precedent on the issue. Furthermore, even if the circumstances in this case justified a different test for equitable subrogation, Cortland Bank has not sufficiently alleged facts which would support a claim under § 7.6(b)(3) of the Restatement (Third) of Property (Mortgages).

### *Effect of this Court's Ruling on Debtors' Affirmative Claims for Relief*

It is unclear whether the dismissal of the amended counterclaim renders moot the debtors' request for declaratory relief in their adversary complaint. For example, if this Court determines that Cortland Bank's amended counterclaim for equitable subrogation fails to state a claim for relief under Ohio law, is there any need to address the debtors' claim for a separate declaratory judgment that Cortland Bank does not possess a security interest in the debtors' residence under the doctrine of equitable subordination? Because the debtors have not filed a separate motion with respect to their affirmative claim for relief, the Court believes that the best course of action is to invite briefing on this issue. *See* Fed. R. Civ. P. 56(f) (court may grant summary judgment for a nonmovant, or on grounds not raised by a party, only after giving notice and a reasonable time to respond); Fed.

22

R. Bankr. P. 7056 (applying Fed. R. Civ. P. 56 in bankruptcy proceedings).

Accordingly, the Court invites the parties to submit briefing on this issue by

**January 5, 2021**, and makes no final determination with respect to the debtors'

claim for relief in their complaint.  Because this decision does not yet resolve all

claims of all parties to this adversary proceeding, the Court does not intend this

opinion and related order to be a final appealable order within the meaning of

28 U.S.C. § 158(a)(1).  *See* Fed. R. Civ. P 54(b) (made applicable in bankruptcy

proceedings under Fed. R. Bankr. P. 7054(a)); *see also Ritzen Group, Inc. v.*

*Jackson Masonry, LLC*, 140 S. Ct. at 589–90.

## CONCLUSION

For the reasons stated above, the Court: (1) grants the debtors' motion to

dismiss the amended counterclaim for failure to state a claim; (2) denies Cortland

Bank's motion to certify a question of state law to the Ohio Supreme Court; and

(3) believes that dismissal of the amended counterclaim may render moot the

debtors' own request for declaratory relief, but invites the parties to submit briefing

on this issue by **January 5, 2021**.  The Court does not intend this opinion and

related order to be a final appealable order within the meaning of 28 U.S.C.

§ 158(a)(1).  *See* Fed. R. Civ. P 54(b) (made applicable in bankruptcy proceedings

under Fed. R. Bankr. P. 7054(a)); *see also Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. at 589–90.

IT IS SO ORDERED.